All right, our fifth case for this morning is Wendy Dolin v. GlaxoSmithKline. And we will begin with you, Mr. Esfandiari. Good morning and may it please the Court. My name is Bijo Esfandiari and I have the honor of representing the appellant, Wendy Dolin, in this matter. The issue before the Court is whether or not the District Court abused its discretion in denying Ms. Dolin's Rule 60B motion. Our position is that the Court did abuse its discretion because when one reads the record and reviews the transcript, it becomes clear that the Court was of the opinion that it really had no discretion to grant the motion. There are statements made in the transcript where His Honor actually states, while he may agree with us on the merits, he felt that his hands were tied in light of what the Seventh Circuit had done, this Court had done, and in light of the fact that the Supreme Court had denied certiorari and an alternative GVR request. This Court has, on multiple occasions, held when a District Court fails to exercise the discretion that it has, that that itself constitutes abuse of discretion as a matter of law, and that is what we believe occurred here. That's not a failure to exercise discretion. It's simply a conclusion by the judge that there is no change in the law that would justify revisiting the case. And your whole argument was based on the notion that the Albrecht case in the Supreme Court somehow radically changed the legal landscape. He's rejecting that. He's saying there was no material impact of the Albrecht decision on our Court's decision when this case was previously here. If one reads the decision, it appeared the judge was, the District Court was persuaded by the fact that the Supreme Court denied certiorari. And this Court, as well as the Supreme Court— What's the clearest evidence of that in the record? I mean, I see Judge Hart asking you a number of questions and saying, if I recall correctly, that I should not do this, not that I cannot. What's the clearest evidence that he did not think he had discretion? I think the statement which appears on page 11 of the appendix, I might have disagreed with the Seventh Circuit, but after they have spoken, I have to follow the Seventh Circuit. So here, he's essentially implying that he has no discretion to act when this Court in Frito-Lay, the Supreme Court in Standard Oil, specifically held that when there's a legal change of law, when the law changes or there's a material change in the manner in which the Supreme Court approaches a legal doctrine, that a Rule 60b motion is appropriate. What page are you looking at? It's—I'll just go to the transcript, Your Honor. Maybe you're looking at 10. It's not 11, yeah. I'm sorry, it's 10, Your Honor. My apologies. It is page 10. It's right at the top. Right. And then I see the case as one of clarifying what the law was and not as a change of law. And on that— There's the editorial comments about us. You and me. Yes, you and me. Yes. Judge Sykes is not involved. And then—but I mean, it's—that's a pretty thin read to say the district judge didn't understand he had some discretion, albeit quite tightly confined under 60b-6. And there's another section in the record, Your Honor, where His Honor states, this is not one of those cases where I think a district judge should grant a Rule 60b motion. Should. Should. However, I may feel about the merits one way or another. But what he's doing there, this is—I mean, in many ways, let's assume you're right in that Albrecht does represent maybe not a sea change, but a change in emphasis in some ways. But nonetheless, Rule 60b is not a rule for a do-over of every case every time the Supreme Court goes to some trouble to say there are only certain ways the FDA can speak that deserve the kind of weight, I suppose is one word to say, you know, a formal notice and comment rulemaking. And I understand the point that there was no formal notice and comment rulemaking with respect to the possibility of a Paxil-specific supplement. There was with respect to the class of the SSRIs, but— There was not, Your Honor. Well, anyway, that was—the class label was what the FDA had been doing. But the Paxil-specific sort of gets lost. It doesn't happen. The FDA never says anything. But the district judge, I think, doesn't see this as a big enough change. It's not like Bailey, you know, where it used to be that you could convict somebody for possessing a firearm under your mattress, and tomorrow you can't anymore. That was a total flip-flop by the Supreme Court vis-a-vis where the courts of appeals were. This isn't. So let me address that, Your Honor. And I think that the central case with respect to Rule 60 is the Ramirez decision, which I believe Your Honor authored. In Ramirez, this Court specifically held, when analyzing what factors to look at, it was a change in the Supreme Court's approach, and that was the word that was used in Ramirez, a change in the Supreme Court's approach. And what the Supreme Court did in Albrecht was it changed its approach on how preemption is to be decided. It took away the idea of this hypothetical what would the FDA have done analysis, which this Court— So you see it as overruling, Wyeth? It changed the approach, and it certainly overruled it to the extent that you can no longer rely on what would the FDA have done. So, for example, Judge Hamilton, the statement that is in Dolan where it stated the reason that this Court found preemption, the FDA—no reasonable jury would have found that the adult suicide warning under the CBE regulations between 2007 and 2010, that no longer is correct under Albrecht because we no longer look at would the FDA have approved a label. What we look at is— If Albrecht was that dramatic a departure from Wyeth, don't you think it would have—the Court might have been a little more explicit about it? I think the Court was explicit because it specifically had—you have to have evidence of the FDA prohibiting you from warning. So you no longer—and that is why it makes sense for the Court now to decide and not  Well, that's why the Court thought it was a clarification. It's how do you make the showing that Wyeth was talking about? And implemented new evidence. So now, for example, Your Honor, you have to actually introduce a—the manufacturer has to present a label to the FDA that is adequate under state law, fully inform the FDA as to the basis of that label, and the FDA has to specifically reject it. That's to say no. And so that is something new. And I recall, Justice Sykes, when I was arguing Mason in front of you, Her Honor asked me specifically that, you know, when—that was not your belief under Wyeth. It used the word that doesn't have that extreme requirement that one has to propose a label and have that be rejected. And that was your terms. And that's how a lot of judges were reading Wyeth, that you do not need to present a and say that the FDA would have rejected this label. I'm not sure how that distinction helps you here, because in this case, there was a label change that was formally rejected. There was not. Multiple times. No. First of all, Albrecht requires that you have to present a label that is required under state law. It has been our position from day one that GSK never did that. The label, even the 2006 year doctor letter and the proposed label, did not satisfy state law because it only extended the risk up to the age of 30. Our—what our experts testified to and what we requested was a simple short statement that Paxil causes suicide in adult patients that would have adequately informed Mr. Dolman's treater. But even the narrower additional warning was rejected? It was not, Your Honor. This is the one where you were invited. We don't want to mess up the class-wide warning with this information, but you may, if you wish, ask for a special supplement. And if one looks at the record, because GSK—step back in context. FDA, Your Honor, was trying to enhance labels. At that time when this occurred, the FDA kind of got caught with egg in its face because Europe had determined that Paxil causes suicide risk. FDA didn't have anything. Nobody in the U.S. knew. Congress was questioning the FDA. Why are you not—what's going on here? And they began to review the Paxil data. They found that GSK was miscoding adverse events. That brought in—they actually, for a moment, issued a rule saying do not prescribe Paxil to pediatric patients. And then determined to review the medications and the data from all of the other manufacturers and concluded that there is a risk extending up to age 24. Our position is that the—GSK never gave the FDA all the information that it had that would have supported the unique risk that is inherent in Paxil. In Paxil, as opposed to the other SSRIs. As opposed to the other drugs. And that—both Weiss and Levine state—I'm sorry, both Levine and Albrecht state that the duty is with GSK at all times. So even if the FDA said we're looking at this type of clinical trial data, give us that data, which GSK didn't even give them all the data that the FDA requested. But GSK itself knows that not only does it have that data, but it has a wealth of other data. All of which, under the FDA provisions, would have triggered a labeling change and doesn't do that. That deficiency is on its part. So is the theory that GSK—GSK is asking explicitly and repeatedly to put a more dire warning about suicidality for its product, correct? And is the theory that it was withholding information that—deliberately that would have convinced the FDA to do what it wanted to do? It did not give the FDA all of the information that it had in its possession. We have that testimony. We presented it. It's cited in the record. They had data from their locally funded studies that they did not present. It had a host of additional information. Did GSK notify the FDA that those local studies existed? I don't believe so, Your Honor. It certainly did not provide that data to them. But also the other information, Your Honor, to look at, GSK—and we presented it through had a whole host of additional information that would have triggered a labeling change under the FDA regulations. I want to close with this one point, Your Honor. FDA regulations are far lower—the standard of when to trigger a labeling change is far lower than what state law provides. State law provides an actual causation to prove our case that negligence and harm occurred. Under the regulations, you don't even need to have a causal association. In Levine, Your Honor, the Supreme Court said a warning was required based on 20 adverse event reports that were just—not even clinical trials. It was just patients had suffered some harm from 1965 until the 1990s. Twenty adverse event reports, and the Supreme Court said that that was sufficient for the purposes of the manufacturer initiating a labeling change. Here we have clinical trial leaders— I'm going to ask you to imagine an alternate series of events here. Suppose we had affirmed the $3 million judgment. CERT was denied. Six months later, the Supreme Court said this exception we recognized in Wyeth was a mistake. There is no such obligation. Money has already changed hands. GSK is the party filing the 60B motion. Your response? I think they have every right to do that, Your Honor. One thing one looks at, though, I believe, is whether—and this Court hasn't found it, but I know the Ninth Circuit, for example, has found it with respect to Rule 60B is prejudice to the parties. Have the parties altered their position somehow? So, for example— They've paid you $3 million. They didn't know you under current law. The hypothetical given by the Ninth Circuit was, for example, if land had been conveyed and all of a sudden you start developing the land and then the law changes and demonstrates that you no longer should have had that land, the Court will come in and say, well, under those circumstances, it's too late in the day to bring a Rule 60B because the parties have relied on a judgment and moved forward. We don't have that here because— When is it too late? It's certainly not too late in this posture, Your Honor. When is it too late? When is it too late? I don't know the answer. There's no time limit under 60B-6. There is no time limit under Rule 60. Eventually, though, if enough time goes by, Your Honor, I understand that that would be too late. Case after case, what the Supreme Court looks at is the diligence of the party, and here we were more than diligent, Your Honor. So, for example, in Gonzales— I think we have that position from your brief. Right. Okay. Yes, I think we'll have to move on. Thank you very much, Your Honor. Thank you. Ms. Harris. May it please the Court. Sarah Harris for Apley GlaxoSmithKline. For two independent reasons, this Court should affirm. First, Dolan has not shown anything close to the exceptional degree of error required to reverse a district court's denial of Rule 60B-6 motions under the exceedingly deferential standard of review this Court applies. And second, even if this Court were to apply the Rule 60 criteria anew, this is a case where the law comprehensively bars relief. Reversing the district court here would be truly unprecedented. This appeal is one that truly warrants Rule 38 fees and costs. I couldn't disagree with you more about that. I think that reading Albrecht, there are certainly changes in emphasis that the Supreme Court has made. On the other hand, of course, there's the Rule 60B standard, and every tweak doesn't trigger a right to Rule 60B relief, as opposed to the possibility of it. Or we would never be finished with any litigation, maybe ever. So there are finality concerns. But it seems to me that there are some significant differences of emphasis in Albrecht. And it was not one of those situations where five years elapsed before somebody filed the Rule 60B motion. It's a remedy provided for in the Rules, and people can ask for it. So a couple of responses, Your Honor. First, even if you were to think that Albrecht does some sort of clarification that might It does. The Supreme Court has a whole column in the opinion where they say the reason we're taking this is because the courts of appeals have been all over the block about whether it's legal or a question for the court, a question for the jury. And then they go on to have a very interesting discussion, at least from my perspective, about exactly how formally the FDA has to articulate its position and through what vehicles. And as I say, I see this as part of maybe a bigger pattern of the Supreme Court tightening up on its notions of administrative deference and what sorts of things deserve that or not. But none of that strikes me as frivolous. But here's the problem. I think there's at least two other independent reasons why even granting all of that, this Rule 60 argument would be frivolous, the first of which is under Nash and this court's other cases, Dolan would need to show that those changes that Albrecht brought were, in fact, outcome determinative to this court's decision in Dolan. And I don't think there's any way of doing that, because this court in Dolan says a couple of things that really anticipate even Dolan's reading of Albrecht. First of all, this court says in at least four places of its opinion that the FDA, in fact, rejected the warning. But there is more evidence in the record. The FDA rejected something. But did the FDA reject exactly this? Again, if we're just talking about whether this is a frivolous motion under the rule or not, forget about who wins on the merits. But frivolous is a pretty strict standard. Right. And so the other part of it is, again, the other problem is Dolan is asking for something that under Chambers is well beyond a district court's power to grant, which is a district court cannot vacate this court's opinions. Well, if a district court wouldn't do that, but there's actually a whole procedure in place, whereas a district court can give an indicative ruling, the district court can follow the law of the case, but if the Supreme Court has intervening authority, or let's take a different instance, suppose Congress passes a statute in the meantime, and both this court and the district court have been relying on the previous law, that might be an area where you would say, well, that there's a new statute, you know, or a new Supreme Court decision, and the district court could indicate its willingness to reconsider if this court thought that was the right thing to do, and we have these indicative rulings. But I think the problem is, under Chambers, this court seems to have been quite clear, if your problem is with the order that the Seventh Circuit issued, which is the case here, that is the dispositive order, that Dolan is asking the district court to vacate, the proper procedure is absolutely not to go through Rule 60, it is to ask this court to recall its mandate, because that would be the appropriate way of getting this court to vacate. And you would sanction somebody for asking the district court, instead of filing a motion to recall the mandate? Well, in combination with all of that... That's pretty stunning. I mean, you'd be a very difficult person to please. In combination with the other factors in this case, I think it would be fair. Again, we're not just saying any one of these would necessarily warrant Rule 38, but we are saying... This is a woman who won a $3 million verdict that we took away from her for the reasons explained in our opinion, there you go. But this case throughout has been a closely balanced case. I mean, I think the other important factor to consider is, if you talk about the diligence aspect and bypassing remedies, and I think it is significant that the way this case came up was that this court was told that there was no need to wait for the Albrecht decision, that Dillon said, please don't hold it, and even if this court... People often do that. I will say it's always an interesting strategic legal decision for counsel, whether to ask that something be held at this level, or whether to just say, things are over and done with in the Seventh Circuit, let's let the hold happen at the Supreme Court level, which is what they did here. It was held... As we all know, it's a cert denied, not a GVR, but whether that's actually a material difference is certainly an interesting debate as well. So I do think if you look at the combination of factors, and the standard of review, it should have been clear that there was no reasonable prospect of success on this appeal. Again, you don't have to necessarily grant fees and costs, but we do think that the outcome of this appeal should be quite clear. Ms. Harris, what does the record show about how complete GSK's disclosure of the local or satellite trials was to the FDA at the relevant time? Well, Your Honor's opinion does address in several places that FDA was... We're being told that we were reading the record incorrectly, however. And first of all, that's not an issue for Rule 60, because again, this is sort of showing that this... Maybe you could answer Judge Hamilton's question though, just in case we're interested. Of course. Judge Hamilton, the indications are that that... Again, that was part of the trial record, that was part of the arguments on appeal this last time, and it is clear, this court said, FDA was aware of the nature of the data it received from GSK. But see, what does that mean? Is that the same as a sentence that says FDA knew that GSK chose not to give a complete set of data to it? If FDA knew that, then I guess they proceeded on the basis of incomplete information. If FDA simply appreciated, okay, here's the study, GSK forwarded this along, thank you, we'll plug this in, that's a different statement to make. So where do we see the FDA knowing that GSK chose not to send everything? I mean, again, I do think that that on pages 8, I think it's 813 and 815 of this court's opinion, where does the record at FDA show that FDA knew GSK had made this cut in terms of what information to send and what not to? I think that is... I don't think it says that anywhere in the opinion. I thought the FDA had said, for purposes of the meta-analysis that it was doing of the whole class of drugs, we want certain categories of studies, tell us what you're including, tell us what you're not including, and why. Is that correct? Yes, that is correct. And I think, again, this shows that... And did GSK do that? My understanding is that it did. Now, I don't have a record site to point to right now, but I do think this shows that, again, this is really a redo of what is happening on appeal before, and that that is not something appropriate for Rule 60, especially given all of the other factors that are not satisfied in this case. And so, again, there are many, many pieces of this court that indicate Rule 60 is not an opportunity, even if you thought there was something wrong with this court's decision, which, again... Well, that's the set of cases you need to look at. I can think of cases where it was absolutely clear that this court got it wrong. I remember one out of Indiana, where we predicted that the Indiana Supreme Court was going to You remember this one? I do. And so we decided, in accordance with our prediction, we were flat wrong. The Indiana Supreme Court took a case about seven months or a year later. They said, nope, we don't agree with the Seventh Circuit. They were wrong. So somebody came back with a Rule 60b motion, which we denied, because of finality interests, because of other things. Maybe we shouldn't have, but that's what we did. But, again, the Supreme Court in Gonzales v. Crosby, in the other cases, says, look, even if you aren't sure if your opinion were right, and, again, we think this one was 100% right, that is not what Rule 60 is about. You need much more than that. Otherwise, the floodgates would be open any time there were any sort of debatable change in law to upend final judgments. And that would really, under Norgaard, this court is very clear, that would be extremely destabilizing for the path of the law, and not something that this court should do. This court has no further questions. All right. Thank you. I think your time had more than expired, Mr. Esfandiari. If you can limit yourself to about 45 seconds, I'll let you do that. Judge Hamilton, in response to, as to the FDA not receiving all of the data that GSK had, we discussed that in our brief on page 21, in the opening brief, and give different that was given in that regards. I also note that in Albuquerque, the Supreme Court held that the manufacturer has to show that it was prohibited from giving the warning that the FDA required. And in this case, the PMK, the person from GSK who testified at trial, testified in response on cross-examination that the FDA never prohibited them from issuing the warning that Ms. Dolan says should have been provided. Finally, in response to whether the court had jurisdiction to grant the Rule 60B motion, Your Honors, I encourage you to read the LSLJ partnership versus free-to-lay decision, which is a very short decision, 920F2 476, wherein this court held that if an intervening change of law occurs, the district court can entertain a Rule 60B motion. There, the court felt it didn't have any discretion, and this court reversed it back and said, no, you do have discretion. Go ahead and do your job, which is exactly what we're asking this court to do in this case. Thank you very much, Your Honor. Thank you. Thanks to both counsel. We'll take the case under advisement.